Watkins *v.* Milligan.

---

## HENRIETTA E. WATKINS

*v.*

## HENRY C. MILLIGAN et al.

1. A married woman gave a bond and mortgage on her own lands, which was to be used in paying a debt of her husband.—*Held,* that she could not compel its cancellation after it had been so used, by assigning it to the creditor, although another way of using it to effect the purpose was contemplated and suggested by the parties when it was executed.

2. Relief at the hearing can only be granted on grounds set forth in the bill, or within the issue made by the pleadings.

---

Bill for relief. On final hearing on pleadings and proofs.

*Mr. E. S. Cowles,* for complainant.

*Mr. W. E. Potter,* for Gould and Eberhardt.

THE CHANCELLOR.

The complainant filed her original bill November 29th, 1880, against the defendant Henry C. Milligan, alone, stating that in September preceding, he, representing to her that he was about to raise by loan on his note $1,000, to be used in business transactions in the city of New York, in which her husband (now dead) and he were interested, requested her to execute and deliver to him her bond for $1,000, and her mortgage of certain land of hers at South Orange, in Essex county, to secure the payment of it, to be used as collateral security for the payment of his note, and that she and her husband executed and gave him the bond and mortgage accordingly; that she gave them to him for that purpose only, and upon the express agreement and promise, on his part, that if he should not succeed in raising the money on the note they should be immediately returned to her and canceled; that she received no consideration for them; that he did not use them for the purpose for which they were given, and that he refused to return them to her. The bill prayed an injunction restraining him from disposing of the bond and mortgage, and for a decree requiring him to deliver them up to her for cancellation. By his answer, Milligan denied that the bond and mortgage were given for the purpose stated in the bill, and that he made the representations stated by the complainant, but alleged that the bond and mortgage were given to enable him to meet an indebtedness of $1,000, for machinery furnished to the Milligan Metal Seam Company (a corporation in which Mr. Watkins was interested) by the Ferracute Machine Company, of Bridgeton, in this state, which indebtedness was then about to mature, and that they were, on the 17th of September, 1880, in good faith assigned to the last-mentioned company, accordingly, in settlement of that claim. He further said that Mr. Watkins was one of the incorporators of the Milligan Metal Seam Company, and took stock in it to the amount of $56,000 at a par

valuation, for or on account of which he agreed to pay $8,000 in cash, in installments, one of which, of $2,000, was payable on the 18th of October, 1880; that in view of Mr. Watkins's anticipated inability to pay that money when it should become due, the bond and mortgage in question were given, and in consideration thereof stock of the company to the amount, at par value, of $10,200 was, on the 12th of November, 1880, issued to the complainant, by whom it is still held. After the filing of that answer the complainant filed her supplemental bill, stating the assignment of the bond and mortgage to the Ferracute Machine Company, and a subsequent assignment of them by that company to the defendants Gould and Eberhardt, but charged that all those assignees took the bond and mortgage, subject to the equities existing, as the complainant alleges, between her and Milligan, when they were given in relation thereto, and claimed the same relief against Gould and Eberhardt as she had prayed in the original bill against Milligan. Gould and Eberhardt, by their answer, allege that the assignment to the Ferracute Machine Company and the assignment to them were both *bona fide*, and without notice of the claim now set up by the complainant; that the consideration of the assignment to the company was the indebtedness of the Milligan Metal Seam Company to that company, and the consideration of the assignment to them, the sum of $1,000 due to them from that company for goods and materials previously furnished to it by them.

The right of the complainant to the equity she claims depends wholly on the proof as to the allegations of the bill on which they are based; for they are denied by the answers. Those allegations are that the bond and mortgage were given entirely for the accommodation of Milligan, and to be used by him only in a certain way (as collateral security for his note), and if not so used were to be returned to be canceled. To entitle her to a decree she must establish the truth of these statements. The proof does not sustain them. It appears that in August, 1880, a company called the Milligan Metal Seam Company was organized (under the laws of New York), in which Mr. Watkins was largely interested. He and Mr. Milligan appear to have taken the whole

of the stock, the full amount of which was $150,000, of which the former took $60,000 and the latter the rest, $90,000. Mr. Watkins agreed to pay to the company, on account of the stock taken by him, $8,000 in installments, the first (of $2,000) to come due in two months from the date of the organization, which took place August 18th, 1880. The installment therefore fell due on the 18th of October following. The company, by resolution passed on the day of the organization, undertook to pay to the Ferracute Machine Company $1,000 for manufacturing a certain machine, which was then in the possession of a commercial firm named Hine & Co. The machine was one for making an impermeable seam on sheet metal, and the Milligan Metal Seam Company was interested in certain letters patent relating to such machines, and would derive income by way of royalty from the use of the machine mentioned in the resolution. For that reason, and to induce the machine company to make other like machines if ordered, it was the interest of the Milligan Metal Seam Company to pay the debt of $1,000. To furnish the means of paying it, Mr. Watkins, in September, agreed to give the bond and mortgage in question on account of the installment of $2,000 which would be due from him in October. Mr. Watkins's stock in the seam company was issued ; $20,000 of it went to his wife, but it was for his use; $10,200 of that amount was issued to her November 10th, 1880. It appears, from the complainant's own testimony, that the bond and mortgage were executed by her at the request of her husband, and that they were to be used to raise the $1,000 to be paid to the Ferracute Machine Company. She says it was for the purpose of getting the seam company under way that she and her husband executed the mortgage. She swears that Milligan was to raise the money by getting his own note discounted and pledging the bond and mortgage as collateral thereto, and that he agreed that if they were not used in that way they should be returned to her. Her son, who was present at the conversation between her and Milligan about the mortgage, testifies that he heard her tell Mr. Milligan that she did not want the mortgage recorded under any circumstances, and that if he could not use the mortgage as collateral to raise

money on his own note to be used in the business in which Mr. Milligan and Mr. Watkins were then interested, he must return the mortgage to her for cancellation, and that she would only execute it upon the distinct understanding that he would return it to her for cancellation if he could not use it as collateral to raise money on his own note; and he says Mr. Milligan then told her that he would return the mortgage to her for cancellation if he could not so use it. Mr. Milligan's version of the matter, however, is that the complainant made the remark (but not until after the papers were executed) that she hoped he would not have to use them, and that he reminded her of the fact that the seam company wished to pay the Ferracute Machine Company in a few days; that he was afraid he would have to raise the money on his own note, and that if he should not be able to negotiate the bond and mortgage he might raise it on his own note. He denies, expressly and explicitly, that the bond and mortgage were given to him on the agreement or understanding sworn to by the complainant and her son, or that he made the agreement to return them to which they testify, or any like agreement, and swears that the bond and mortgage were delivered to him by the complainant to be negotiated for the benefit of the Milligan Metal Seam Company, and that after unsuccessfully trying to raise money on them to pay the debt he assigned them to the Ferracute Machine Company in settlement of the indebtedness.

The testimony of Mr. Taylor, the scrivener by whom the bond and mortgage were drawn, and who was present at all the conversation between the complainant and Mr. Milligan, and who drew, also, the receipt given by the latter to the former for the papers (it appears to have been destroyed), is very important. He says he went to Mrs. Watkins with Mr. Milligan, and on their arrival the latter explained that there was an indebtedness of the company about maturing; that there was also an installment (according to his recollection, $2,000) maturing upon an agreement of Mr. Watkins, and that he had talked with Mr. Watkins prior to his departure (he was then in the West on business), and a mortgage had been suggested by Mr. Watkins, if he,

Mr. Watkins, could not raise the money; that the complainant replied yes, she knew all about it; that she had talked with her husband before he left, and had just received a letter from him in regard to it; that she went upstairs and got the letter and brought it down and read it over to herself, and that she said she had hoped that they would get along without any mortgage, and she wanted Mr. Milligan to try to raise the money in some other way. He further says that his recollection is that both parties understood that the purpose of the mortgage was to raise $1,000, and that there was something said about how the mortgage was to be used; that the matter of raising money on it was talked over, and he thinks Mr. Milligan said money might be raised by using it as collateral, but in any event money was to be raised on it, and that the complainant told Mr. Milligan that she would prefer not to have the mortgage go on record.

It seems clear, from the testimony, that the bond and mortgage were given at the request of, and for Mr. Watkins, to be used in raising $1,000 to be paid to the Ferracute Machine Company for the Milligan Metal Seam Company, and that Mr. Watkins was to have credit for the amount on account of the installment of $2,000, to become due from him in October; that it was contemplated that Mr. Milligan might not be able to raise the money by selling the bond and mortgage, and therefore it might become necessary, in order to raise the money, for him to pledge his own credit, by his note, and assign the bond and mortgage as collateral, and he was willing to do so, if necessary; that the complainant preferred the latter course, while, on the contrary, Mr. Milligan desired and intended to raise the money without himself becoming personally liable, if possible, and that the money was to be raised, not for Mr. Milligan, or on his account, but for Mr. Watkins and on account of his liability to pay the installment of $2,000. Mr. Milligan says he told Mr. Watkins that he might have to use his own note to raise the money, but if the Ferracute Machine Company would take the bond and mortgage, so much the better. The statement in his letter to Mr. Watkins, accompanying the bond and mortgage, which he sent to him at St. Louis for his signature, that he would go to

Watkins *v.* Milligan.

Philadelphia on Friday and endeavor to get his note discounted for $1,000, offering the mortgage as collateral, and a similar statement, which he apparently made to the complainant in the presence of Mr. Taylor, were probably made in view of the fact that both Mr. Watkins and he supposed that it would be necessary to raise the money to pay to the Ferracute company, and that that company would not take the bond and mortgage instead of the money. The proof is (the complainant herself admits it) that the bond and mortgage were given to be used to raise the money to pay the Ferracute company. Mr. Taylor is a disinterested witness, and one who had full opportunity to know what the understanding was, for he not only drew the bond and mortgage but the receipt also. He testifies, as already stated, that the matter of raising money on the mortgage was talked over, and he thinks Mr. Milligan said money might be raised by using it as collateral, but in any event money was to be raised on it. The bond and mortgage were used for the purpose for which they were given. The complainant, therefore, has no ground for complaint and is entitled to no relief. *Jacobsen* v. *Dodd, 5 Stew. Eq. 403.* It may be added that the Ferracute company and Gould and Eberhardt appear to have taken the bond and mortgage without any notice whatever that they were subject to any defence whatever.

It is urged by the complainant that it does not appear that the money was, in fact, due to the Ferracute company from the Milligan company, inasmuch as according to the resolution it was not due to the former until Hine & Co. had approved the machine, and it does not appear that they had done so. It is enough to say on that subject that the bill makes no claim on that point, and the pleadings present no issue thereon. The complainant is therefore not entitled to any relief on that ground. *Andrews* v. *Farnham, 2 Stock. 91.* The bill will be dismissed, with costs.